# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL ANTHONY HANGMAN,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No. C23-4048-LTS<br>(Crim. No. CR21-4003-LTS)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

This matter is before me on Micheal Hangman's pro se motion (Doc. 1) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Hangman's prior attorney filed a court-directed response (Doc. 3) and the Government filed a resistance (Doc. 5) to Hangman's motion. Hangman did not file a reply and the time to do so has passed. Oral arguments are not necessary. *See* LR 7(c). For the reasons discussed herein, I find that an evidentiary hearing is not necessary.

## I. BACKGROUND

The events leading to this case are summarized from the presentence investigation report. Crim. Doc. 59. On June 4, 2020, a 9-1-1 caller reported that Hangman was harassing individuals in Rushmore, Minnesota. *Id.* at ¶ 4. The caller followed Hangman's vehicle until Hangman slowed his vehicle, stuck a gun out of the driver's window and fired it into the air.[1] *Id.* Later that day, Hangman led law enforcement on

---

[1] Hangman denied the 9-1-1 caller's allegation that he fired the gun. This disputed allegation had no impact on the guideline calculation or the ultimate sentence.

a high-speed chase into the Northern District of Iowa, with speeds reaching up to 98 miles per hour.  *Id*. at ¶ 5.

For public safety reasons, law enforcement discontinued the pursuit near Sibley, Iowa.  *Id*.  Law enforcement had prior knowledge that Hangman had a friend in the area.  *Id*. at ¶ 6.  Law enforcement found Hangman's vehicle, still warm, in the friend's driveway and, with consent, searched the garage where Hangman was found and surrendered peacefully.  *Id*. at ¶ 7.  Law enforcement observed a partially covered shotgun behind the driver's seat of Hangman's vehicle, which was subsequently towed to the Osceola County Sheriff's Office in Sibley, Iowa.  *Id*. at ¶ 8.  While inventorying the vehicle, law enforcement found, among other things, a 12-gauge shotgun behind the driver's seat with a shortened, though still legal, barrel; cash; marijuana; baggies and a digital scale with methamphetamine residue in the center console.  *Id*.  On June 5, 2020, law enforcement obtained and executed a search warrant on the vehicle.  *Id*. at ¶ 10.

On April 5, 2021, Hangman was charged by information with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 922(g)(3).  Crim. Doc. 2.  He pleaded guilty on February 10, 2022, and I accepted that plea on February 25, 2022.  Crim. Docs. 52, 53, 55.  With a total offense level of 23 and a criminal history category of VI, Hangman's sentencing guideline range was 92 to 115 months, and the statutory maximum term of imprisonment was 120 months.  Crim. Doc. 59 at 31; Crim. Doc. 73 at 26, 44.

On August 4, 2022, I sentenced Hangman to 120 months' imprisonment and three years of supervised release.  Crim. Docs. 68, 69.  He did not appeal.  Hangman signed the present motion on July 24, 2023, and the court received it on August 21, 2023.[2]  Doc. 1.  On January 31, 2025, I filed an initial review order (Doc. 2) in which I found that

---

[2] Hangman's initial mailing was returned to sender because of an incorrect zip code.  In the initial review order, I found Hangman's motion to be timely based on the prison mailbox rule.  Doc. 2 at 4.

the § 2255 motion was timely, dismissed one claim as procedurally defaulted and allowed one ineffective assistance of counsel claim to proceed. I directed responses from Hangman's prior counsel and the Government. Hangman's prior attorney, Joshua Weir, filed a response (Docs. 3, 4) to Hangman's ineffective assistance of counsel claim on March 25, 2025. The Government filed a resistance (Doc. 5) to the § 2255 motion on March 31, 2025. The matter is now fully submitted.

## II.   LEGAL STANDARDS

### A.   *Section 2255 Standards*

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

3

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Hudson v. United States*, 139 F.4th 1011, 1014 (8th Cir. 2025) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

### B. Ineffective Assistance of Counsel Standards

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness,"

4

*Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is, conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. When evaluating ineffective assistance claims, a court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" to which a criminal defendant is entitled. *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002) (citation omitted). Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Because a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning

that courts should not take into account the "cumulative effect of trial counsel's errors in determining Strickland prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

## III. DISCUSSION

Hangman's only remaining claim is that his counsel was ineffective for withdrawing a motion to suppress, which Hangman directed counsel to file, and allegedly lying to Hangman by telling him the court denied the motion. Hangman states:

> "I told Joshua Weir I wanted him to file a motion to suppress evidence and when he finally did, he stated to me the court denied it immediately. But when I got my Docket Sheet showing all the motions filed and appearance in court, it stated that the suppression motion was withdrawn. Joshua Weir lied to me. I did not tell him to withdraw that motion."[3]

Doc. 1 at 5.

On December 14, 2021, Weir filed a motion to suppress, requesting the court suppress all evidence obtained from a search on and after June 4, 2020, because "[a]ll evidence obtained was the result of an unlawful seizure and search of Defendant's vehicle." Crim. Doc. 40. During a status conference the next day, the court noted that "[t]he motions deadline was yesterday. Defendant filed a bare-bones suppression motion and indicated a brief was forthcoming." Crim. Doc. 42. The court noted that Weir indicated that he intended to file the brief on December 14, 2021, but the arrest of a different client impacted his work. *Id.* Overruling the Government's timeliness objection, the court extended the deadline to file the brief to December 16, 2021.[4] *Id.*

---

[3] Hangman did not file an affidavit or other evidence beyond the allegations in his motion. Nor did he reply to either Weir's affidavit (Doc. 3) or the Government's response (Doc. 5).

[4] In response to the timeline of filing the motion, Weir states that waiting to file was a strategic decision as the "odds of obtaining a favorable plea or sentencing agreement go down considerably once the parties start litigating pretrial motions." Doc. 3 at 3.

6

On December 16, 2021, Weir filed a motion (Crim. Doc. 43) for leave to withdraw the motion to suppress, which the court granted. Crim. Doc. 44.

Weir agrees that Hangman directed him to file a motion to suppress, however, states that he "did not inform Mr. Hangman that the court denied the motion to suppress and [he] did not lie to Mr. Hangman." Doc. 3 at 1. At the time the motion to suppress was filed, the alleged basis for the motion (Crim. Doc. 40) was that "no corroborating evidence had been provided . . . to establish that the shotgun was visible through the window" at the time of the seizure. Doc. 3 at 3. Once the Government provided photographs (Doc. 3-1) that "clearly showed the shotgun in plain view in the back of the vehicle [Hangman] had been driving," Weir withdrew the motion of "his own accord" as he believed the chance of the motion being granted "to be basically zero." *Id.* at 3-4.

The first portion of Hangman's ineffective assistance claim is that Weir lied to him. Weir disputes that, asserting:

> "I may have expressed that opinion to Mr. Hangman by stating I believed the judge *would have denied the motion immediately* upon seeing those photographs, but I don't have a specific recollection of what I said. I know I did not tell him the judge denied the motion immediately."

*Id.* at 4 (emphasis in original). The Government responds that Hangman's claims of counsel lying are contradicted by the record and asserts that Hangman "already made this exact same argument against his counsel in front of the Court, but then withdrew the argument and proceeded to sentencing."[5] Doc. 5 at 8.

Hangman's allegation that Weir lied to him is conclusory, with no factual support supplied by Hangman or otherwise present in the record. *Hudson*, 139 F.4th at 1014 ("Conclusory allegations . . . without factual support do not justify an evidentiary

---

[5] The Government references Hangman's motion (Crim. Doc. 61) to discharge counsel, in which he made allegations of Weir lying to him about the motion to suppress being ruled on, rather than withdrawn. Hangman withdrew that motion after an ex parte hearing. Crim. Docs. 63, 75. At no time during that hearing did Hangman verbalize the allegations to the court, nor does he now assert that the allegations affected his decision to plead guilty. *Id.*

hearing"). In *Hudson*, the movant submitted no affidavits or evidence, either in support of her allegations against her former attorney or in response to the sworn and detailed responsive affidavit submitted by that attorney. *Id*. at 1014-15. Similarly, Hangman did not provide a sworn affidavit or any other evidence. Nor did he point to anything in the record that would provide support for his claim. As such, I find that Hangman has failed to establish that a question of fact exists and no evidentiary hearing on this allegation is required. As to this portion of Hangman's claim, he has failed to make an allegation of ineffective performance under the first *Strickland* prong. *Strickland*, 466 U.S. at 687.

Hangman's second allegation is that Weir improperly withdrew the motion to suppress. This claim fails to overcome the strong presumption that Weir's conduct fell within the wide range of reasonable professional assistance. Weir made the strategic decision to withdraw the motion to suppress when he deemed it fruitless based on preparation and investigation. Hangman has failed to show that this strategic decision was unreasonable and it therefore cannot be deemed constitutionally deficient. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" unless the "strategic choices 'result[ed] from lack of diligence in preparation and investigation.'" *United States v. Johnson*, No. 8:19CR87, 2025 WL 289214, at *3 (D. Neb. Jan. 24, 2025) (citations omitted) (rejecting ineffective assistance claim based on counsel's decision not to file a motion to suppress because "it shows, at best, disagreement with a strategic choice made by trial counsel").

There is no indication that Weir failed to prepare or to investigate the available options. Rather, his decision was one of trial strategy after he assessed the likelihood of success of the motion to suppress once he obtained photographic evidence showing the shotgun in plain view. Weir "believed the chance of succeeding on the suppression motion with the existence of the photographs to be basically zero." Doc. 3 at 4, 3-1. Again, Hangman has failed to make an allegation of ineffective performance under the first *Strickland* prong for this part of his claim. *Strickland*, 466 U.S. at 687.

8

Even assuming that the first *Strickland* prong was met and Weir's performance was deficient, Hangman has failed to demonstrate a reasonable probability of a different outcome if Weir had proceeded with the motion to suppress. To satisfy the prejudice prong, "the convicted defendant must demonstrate that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997)). *See also Tran v. Lockhart*, 849 F.2d 1064, 1067 (8th Cir. 1988) (a petitioner must provide the court "with the type of specific facts which would allow . . . an intelligent assessment of the likelihood that [a petitioner] would not have ple[ ]d guilty."). Hangman does not even make the conclusory assertion, let alone point to any evidence in support, that full litigation of the motion to suppress would have changed anything in his case, let alone that he would have insisted to proceed to trial. *See Meza-Lopez v. United States*, 929 F.3d 1041, 1045 (8th Cir. 2019) ("Courts should not upset a guilty plea simply because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. . . . [instead,] look to contemporaneous evidence to substantiate a defendant's expressed preferences." (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017))). Hangman was fully informed of the potential consequences of pleading guilty with no agreement in place, including the maximum term of imprisonment. Crim. Doc. 53 at 3. Nothing in the record suggests that Hangman would have done anything differently had Weir litigated the motion to suppress. *Hudson*, 139 F.4th at 1015 ("general claims of deficient performance and prejudice are [in]sufficient to justify an evidentiary hearing"). Indeed, as noted above, Hangman does not even allege otherwise.

Because Hangman has established neither deficient performance nor prejudice, his ineffective assistance of counsel claim must be denied.

## IV. CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, I find that Hangman failed to make the requisite "substantial showing" with respect to any of the claims raised in his § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, a certificate of appealability will not issue. If he desires further review of his § 2255

10

Case 5:23-cv-04048-LTS-KEM    Document 7    Filed 08/22/25    Page 10 of 11

motion, Hangman may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## V. CONCLUSION

For the reasons set forth herein,

1. Hangman's motion (Doc. 1) pursuant to 28 U.S.C. § 2255 is **denied** as to all claims and this action is **dismissed with prejudice**.
2. The Clerk of Court shall **close this case**.
3. A certificate of appealability will **not issue**.

**IT IS SO ORDERED** this 22nd day of August, 2025.

_____
Leonard T. Strand
United States District Judge